FRANKLIN COUNTY, JANUARY TERM, 1827.

*Samuel Sinclair* and *Michael Sinclair* vs. *William O. Gadcomb*.

A councillor acting as justice of the peace for the whole state, may lawfully sign a county court writ, to be served out of the county in which it issues and is made returnable.

In an action of debt on jail bond the whole sum due in equity to the creditor may be recovered by the name of damages.

THIS was a *writ of error* to reverse a judgment of the county court rendered at April Term, 1826.

The original action was debt on jail bond in common form. The writ was directed to the proper officers of *Chittenden* county, where the defendants resided, and there served and made returnable to the county court of *Franklin* county. It was signed by the *Hon. Seth Wetmore*, a member of the *Executive Council* and resident in the county of *Franklin*, who by virtue of his office of councillor signed the writ in these words, "*Seth Wetmore, Justice of the*

*Peace* for the whole state." The defendants
pleaded in abatement that the writ was not
signed by any competent authority, and should have been signed
by the clerk or one of the judges of the court to which it was
made returnable. This plea being overruled on demurrer and
a judgment of *respondeas ouster* awarded, *non est factum* was
pleaded and final judgment rendered for the plaintiff at the term
aforesaid. The judgment was entered up for damages and costs
only, the whole sum due to the plaintiff upon the original judg-
ment and execution with interest being included in the damages.
Upon this the present *writ of error* was brought, assiging for er-
ror the decision of the county court upon the plea in abatement,
and the form of the judgment in chief, alleging that the latter
should have been entered up for debt, damages and costs and not
for damages and costs only.

*Bailey*, for the plaintiff in error.

1. As to the first and most important point it is contended that
there is no such officer or magistrate known to our constitution
as a "*Justice of the Peace for the whole state,*" but as it is inci-
dental to the office of Councillor or Judge of the Supreme Court.
It should, therefore, appear upon the face of the writ whether the
person signing it claims to be a justice of the peace throughout
the state from his being Councillor, or being judge, that the op-
posite party may have an opportunity to traverse the fact that he
holds the office from which he derives his authority to sign the pro-
cess.

2. But if this were unnecessary, it is denied that any Justice
of the Peace, Councillor or Judge of the Supreme Court, could
lawfully sign the writ in question.

A Justice of the Peace may sign process, returnable before
himself and direct the same to be executed in any county in the
state.—*Rev. Stat. p.* 126, *s.* 9. He may also sign a writ re-
turnable to the County Court in the County where he resides if it
is to be served in such county. But he cannot issue a writ to be
served in another county, made returnable to the County Court
in his own county or in any other.—*Rev. Stat. p.* 63—4, *s.* 24.

The statute expressly confines to a Judge or Clerk of a County

E

Court, the authority to sign writs returnable before such court, but whereof service is to be made in another County.—*Rev. Stat. p.* 64, *s.* 24.

The enumeration of certain officers who are, in express terms, empowered to sign such process, necessarily excludes all others, and leaves no room for implication or presumption.

3. It is contended that the powers of a Councillor or Judge of the Supreme Court, as a Justice of the Peace, are co-extensive with those of a common Justice of the Peace and not greater, unless a grant of other or larger powers to them can be shown. But no statute can be found which confers on them more extensive powers than any magistrate possesses in his own county. The constitution of this state expressly declares that " every member of the Council shall be a justice of the peace for the whole state by virtue of his office."—*Chap.* 2, *s.* 11.

Now what was intended by the words " Justice of the Peace for the whole state " ? Clearly this and nothing more, that a Councillor might exercise the powers of a Justice of the Peace in any county in the state, in which he happened to be. He may accordingly in any county where he resides, or is, for the time being, solemnize marriage, administer oaths and take ackowledgments of deeds, try causes &c. in the same manner and with as full authority as any other Justice of the Peace ; but he cannot issue a writ bearing date at *St. Albans* in *Franklin County* returnable before himself in *Rutland County*, and to be served in the County of *Windsor*, because no Justice of the Peace can do this.

4. But it is asserted that Councillors have been accustomed to sign writs to be served in any county, and made returnable to the County Court in the county where the writs are dated. This custom is denied. The practice may have obtained in one or two counties, but has never been general ; and it is believed that the instances are very rare of an attempt by a Councillor to exercise the power in question. And, moreover, as the custom, if it exist, is opposed to the express language of the statute, it is incumbent on the party who alleges its existence, to make a clear and satisfactory proof of it.

But whatever may have been the practice in some counties

through ignorance or inadvertance, it is con-  { Franklin, Jan. 1827.
ceived that, in a government, where the pow- { Sinclair vs. Gadcomb.
ers and rights of every officer are defined with great care and
precision, no person can be permitted to prescribe for authority
to sign writs or other process of courts of justice—especially, at
so early a period of our history, that no custom or usage can
have acquired the force of a law in opposition to positive en-
actments.

5. The action below having been debt on Jail Bond, the judg-
ment ought to have been for the plaintiff to recover his debt, dam-
ages, &c. and not his damages only.—1 *Archb. Pr.* 203.

*Aldis* and *Davis,* for the defendant in error.

The authority of a Councillor is the same in every county,
and as he is a *Justice of the Peace* for the whole state, he is of
course a *Justice of the Peace* for each county in the state, as
well as for the one in which he resides ; for the greater includes
the less.—*Vide constitution of Vermont, Chap.* 2, *s.* 11.

As a *Justice of the Peace* for the county of *Franklin* he may
sign writs returnable to *Franklin County Court,* and to be exe-
cuted in the same county ; and as his authority is not confined to
the county of *Franklin,* but is the same in *Chittenden County*
as in this, it follows that all writs signed by a *Councillor* may run
into *Chittenden County* and be there executed.—*Vide Statute.*

It has long been the practice in every county in the state for
Councillors to sign writs returnable to any County Court, and to
be executed in any county in the state ; and such a practice for
a long course of years is sufficient to show that the statute has al-
ways been construed as contended for by the defendant in error.
But if it be thought by the Court that the construction which has
always been given to the statute, and which is contended for by
the defendant in error, is not a true one, yet the court will not
give it a different one if the consequences are likely to be mische-
vious, especially as it is not material as respects future practice
which way the law is settled on that point.

The judgment of the Court below, *That the said William re-
cover of said Sinclair his damages and cost,* and not for debt,
damages and costs, is a matter of form and no ground for error,
especially when there is no pretence that the judgment was ren-
dered for too large a sum.

Royce, J. delivered the opinion of the court.

It is first insisted in support of this writ of error that a councillor has no authority to sign a county court writ, to be served out of the county in which it is made returnable. The statute enacts "that every writ or process returnable to any county court within this state shall be signed by a Judge or Clerk of the County Court in which the cause is to be tried, or by a justice of the peace of the same county." Thus far it would seem that such writ, when signed by a justice was as perfect and available to every purpose, as if signed by the Clerk or Judge of the Court ; and that the only question would be whether a Councillor is a Justice of the Peace of the county in which he resides, so as to take the authority here conferred. But this enactment is immediately succeeded by another, "that all writs or processes signed by a Judge or Clerk of the County or Supreme Court, as well original as judicial, shall run into any county or place within this state, and be there executed by any officer to whom directed." The construction upon these two provisions of the statute has always been, that a common Justice of the Peace for the county could not sign such writ, or perhaps any County Court writ to be served in another county. It would therefore seem to result, that the right of a councillor to sign a county court writ, is not expressly conferred by any statute. The office of Justice of the Peace for the whole state, as incident to that of Councillor, is derived from the constitution ; and the construction of the constitution as far as we are informed has ever been, that the office of Justice of the Peace throughout the state includes that of justice for every county and place within the state, whenever necessary to be assumed, or understood to sustain an act of a councillor in his capacity of Justice of the Peace. When the authority of Councillors to sign these writs, as Justices of the Counties where the writs issued, was thus established, it came to be generally understood, that such writs by them signed were not limited by the local jurisdiction of the County Courts to which they were made returnable, but might run to the extent of their own jurisdiction as Justices of the Peace.— Whether this conclusion was correct or not, it is settled by prac-

tice too long and uniform to be now disturb- ⎰ Franklin Jan. 1827.
ed.    And there is the less occassion to do ⎱ *Sinclair* vs. *Gadcomb.*
this, since it is a matter of indifference how the law on this point
is.    No evil can result from the power thus exercised by these
magistrates ; it is the performance of an act almost wholly min-
isterial, and is but the incipient step in pursuit of justice.

As to the other ground of error, it may well be doubted at this
day, whether a judgment should be reversed because a wrong
name or denomination was affixed to the sum recovered.    But
without deciding this as a general question, we are of opinion
that the sum adjudged to the plaintiff below was properly recov-
ered as damages.    The 75th section of the judiciary act of 1797
relates to actions on bonds with a penalty where the party is not to
have successive remedies, as is contemplated in section 99 of the
same statute, but is to take his whole satisfaction at once.    In this class
of bonds was the one in question.    Here the formal judgment for
the penalty is dispensed with, and the court is authorised at once
to give judgement for what is due in equity and good conscience.
It is true that no name is given to the smaller or subordinate sum ;
it is not, however, the nominal debt sued for, nor can it perhaps
with strict propriety be called a part of that debt, (where the con-
dition is not for the payment of a lesser sum in money, but for
the performance or forbearance of a collateral act,) but is in truth
the damages sustained by the party.    The entry of judgment in
this form, when justice is otherwise done, cannot be alleged as the
ground of error.    The judgement of the County Court is there-
fore affirmed.

*Bailey*, for plaintiffs in error.
*Aldis* and *Davis*, for defendant in error.